**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | ) | |
| **GREG HUDALLA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05 C 5930** |
| | ) | |
| **WALSH CONSTRUCTION COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

The relator in this False Claims Act *qui tam* suit, Greg Hudalla, has moved to bar forty-six witnesses identified in supplemental Rule 26(a)(1) disclosures served by defendant Walsh Construction Co. on December 22, 2011.  The case is set for trial on January 30, 2012.

Hudalla alleges that Walsh engaged in fraudulent billing practices as the general contractor on a number of federally-funded housing projects and received government funds to which it was not entitled.  Hudalla's claims concern eight projects:  South Park Plaza, Beth-Anne Extended Living, Lake Park Crescent, Pershing Courts, Roosevelt Tower, St. Sabina Senior Housing, Westhaven I, and Westhaven II.

Hudalla worked on one of these projects, South Park Plaza, when he was employed by Walsh.  He alleged in his original and amended complaint, the latter filed in February 2009, that Walsh had engaged in fraudulent billing practices on the South

Park project and that when he raised concerns about this, he was told that this was the way Walsh typically billed. Hudalla's claims thus have never been limited to South Park: he alleged in the original and amended complaint that the fraudulent billing included, but was not limited to, not just South Park but several other projects, including Westhaven, Park Crescent, and two others. Am. Compl. ¶ 33. In June 2009, the Court denied Walsh's motion to strike allegations regarding projects other than South Park. *See* Order of June 23, 2009. In short, it has been clear from the outset of the litigation that Hudalla's claims concerned projects in addition to South Park.[1] *See* Summary Judgment decision at 10 (docket no. 198).

As the case progressed, there were pitched discovery battles involving, among other things, whether and the extent to which Hudalla could get discovery regarding projects other than South Park. In November 2010, the Court permitted Hudalla to obtain discovery beyond the South Park project. This discovery included projects other than those on which Hudalla now seeks to recover damages. Walsh argues, and Hudalla does not dispute, that it was not aware until after fact discovery closed – specifically, when Hudalla provided his expert disclosures – of which particular projects within the overall universe on which Hudalla would seek to recover damages. But Walsh certainly was aware of the composition of the universe of projects potentially at issue.

Fact discovery closed on April 9, 2011, and Hudalla provided his expert

---

[1] For this reason, Walsh's contention that it could not have known of the need to identify non-South Park witnesses, or particular non-South Park witnesses, until after the Court ruled on summary judgment is entirely lacking in merit.

disclosures in July 2011. On March 3, 2011, the Court set the case for trial on January

17, 2012 and made it clear to counsel that this was a firm date. (On December 6, 2011,

just after denying Walsh's motion for summary judgment, the Court reset the trial date

to February 27, 2012 due to a conflicting trial, but about two weeks later, on December

22, 2011, the Court moved the date up to January 30, 2012.)

On December 22, 2011, Walsh served the supplemental Rule 26(a)(1)

disclosures that are at issue in the present motion. In those disclosures, Walsh named

a total of forty-seven witnesses whom it had not previously named in either its Rule

26(a)(1) disclosures or in response (or any supplemental response) to interrogatories

served by Hudalla seeking identification of persons with knowledge regarding the claims

or defenses in this case. These include:

- three Walsh employees, including its president;

- two HUD representatives;

- eleven project sponsor representatives;

- seventeen subcontractor representatives; and

- thirteen others.

Hudalla seeks to bar all of these witnesses due to the lack of timely disclosure.

Under Rule 37(c)(1),

[i]f a party fails to provide information or identify a witness as required by
Rule 26(a) or (e), the party is not allowed to use that information or
witness to supply evidence on a motion, at a hearing, or at a trial, unless
the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and

mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."

3

*Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2003).

Rule 26(a)(1) requires a party, without awaiting a discovery request, to disclose (among other things) "each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A). Rule 26(e) requires a party that has made disclosures under Rule 26(a) to

> supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1)(A).

Walsh argues that some of the witnesses were effectively disclosed in its prior Rule 26(a)(1) disclosures; all of them were effectively disclosed via the discovery process; and it "does not intend to call many of these witnesses at trial, but simply identified them as people with relevant knowledge out of an abundance of caution." Def.'s Resp. to Mot. to Strike at 2.

The Court deals with the last of these points first. Walsh says that only one of the newly identified witnesses, its president Dan Walsh, is listed in the final pretrial order as a "will call" witness and that only nine others are listed as "may call" witnesses. *Id.* at 2. It says that it has identified the others "out of an abundance of caution." *Id.* This is no answer to Hudalla's arguments. The Court can conceive of only one reason for Walsh to identify at this point additional persons with knowledge of its defenses: to attempt to preserve its ability to call them at trial (Walsh suggests no other reason for disclosing them). For this reason, Hudalla undeniably faces prejudice from the belated

4

disclosure; this cannot be cured at this late date given the number of witnesses newly identified; and allowing use of all or very many of them would unfairly disrupt the trial. In addition, Walsh has identified no viable good faith basis for naming this many potential witnesses, or anywhere near this many, for the first time this late in the litigation. *See generally David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (identifying factors considered in determining whether to preclude undisclosed witnesses).

With these considerations in mind, the Court addresses in turn each category of newly named witnesses.

## 1.     Walsh Construction witnesses

Walsh next argues that the three Walsh witnesses – its president Dan Walsh, Margaret Walsh, and John Dougherty – were disclosed. Walsh says that John Dougherty was disclosed in supplemental Rule 26 disclosures made in March 2011, though under the name "Joseph Daughrity." "Joseph Daughrity" is identified in those disclosures as having performed "[t]renching activities" and "[r]oofing and fireproofing protection and safety work" on the South Park project. Pl.'s Mot. to Strike, Ex. H, Attachment at 2. In that regard, he was one of nine witnesses identified as having performed such work. By contrast, in the supplemental disclosures that Walsh served on December 22, 2011, it says that Dougherty has knowledge regarding "[a]ll aspects of Walsh Construction, its business practices, and the construction industry generally." Pl.'s Mot. to Strike, Ex. A at 2. The earlier disclosure in no way put Hudalla on notice that Daughrity / Dougherty would testify about anything other than physical work done on the South Park project, which likely is not a disputed issue or at least not a

5

significant disputed issue.  It was insufficient to call the witness to Hudalla's attention for the much broader purpose listed in the December supplemental disclosures. Dougherty may testify only on the topics listed in the March 2011 disclosures.  The new, broader disclosure is neither justified nor harmless.

Walsh's new disclosures identify Margaret Walsh as a witness regarding "[a]ll aspects of Walsh Construction, its business practices, the construction industry generally and the Lake Park project specifically." *Id.* at 3.  Walsh says that it disclosed her in an interrogatory answer.  But that was an answer to an interrogatory that sought identification of Walsh employees who worked on the South Park project, not the Lake Park project.  Walsh never identified Ms. Walsh as a witness regarding the Lake Park project in its original and earlier supplemental disclosures, or anywhere else.  Ms. Walsh may testify regarding the South Park project, but nothing else.  The broader disclosure is neither justified nor harmless.

Walsh's new disclosures identify Dan Walsh as a witness regarding "[a]ll aspects of Walsh Construction, its business practices, and the construction industry generally." Pl.'s Mot. to Strike, Ex. A at 2.  Walsh says that he was mentioned in a handful of depositions.  It is unsurprising that Mr. Walsh, as company president, might have been mentioned during one or more of the many depositions taken in this case.  But neither his importance within the company nor the mere mention of his name at one or more depositions was sufficient to put Hudalla on notice that Walsh intended to present Mr. Walsh as a witness at trial (and an important one at that, as Walsh had indicated in a written filing that his anticipated direct examination will last two hours).  This is particularly so in a case like this one, where literally hundreds of persons have been

identified in Rule 26(a) disclosures and in depositions.  Walsh makes no attempt to point out anything in the deposition "disclosures" that would have provided any hint that Mr. Walsh had relevant testimony to contribute at the trial of the case.  It has forfeited any such argument.  The nondisclosure was not justified, nor is it harmless.  Mr. Walsh is barred as a witness.

**2.      HUD representatives and third-party witnesses**

Walsh makes no argument regarding the two newly disclosed HUD representatives, Joseph Galvan and Ed Hinsberger.  It has therefore conceded the point.  These witnesses are barred.

Similarly, Walsh makes no argument regarding thirteen so-called third-party witnesses, who are title service agents, architects, and representatives of lenders.  It has conceded the point on these witnesses as well, and they are barred.

**3.      Project sponsor representatives**

In its March 2011 supplemental disclosures, Walsh identified "project sponsors" for each of the projects – namely, the representative of the project's owner.  Hudalla says that the December 2011 supplemental disclosures identify eleven new project sponsors.  Based on a chart attached to Hudalla's motion, their names and projects are:  Applegate (Westhaven); Cooper (Westhaven); Hull (Lake Park); McGhee (Westhaven); Moore (Lake Park); Oller (Lake Park); Olsen (Westhaven); Peterson (Lake Park); Reynolds (South Park); Weller (Westhaven); Ziegenhagen (Lake Park). Pl.'s Mot. to Strike, Ex. L.

The same chart indicates that in a December 20, 2011 draft of its trial witness

list, Walsh listed three of these newly identified persons, Cooper, Zeigenhagen, and Olsen, all from the Westhaven project, as "may-call" trial witnesses. *See id.* In an updated draft dated January 10, 2012, Walsh lists none of these three witnesses. In that same disclosure, however, Walsh lists as may-call witnesses two of the project sponsor representatives first disclosed in its December 22, 2011 supplemental Rule 26-(a)(1) disclosures: Brian Moore and Carl Peterson, both from the Lake Park project. *See* Def.'s Resp. to Mot. to Strike, Ex. 2. Because Walsh specifically relies on this updated list in its response to Hudalla's motion, *see* Def.'s Resp. to Mot. to Strike at 2, the Court will hold Walsh to that representation and therefore bars the other nine project sponsor representatives first named in the December 22, 2011 supplemental Rule 26(a)(1) disclosures. Those other representatives' late disclosure was neither justified nor harmless.

With regard to Moore and Peterson, Walsh says Hudalla is not prejudiced by their late disclosure. Hudalla complains that these are not the same project representatives that Walsh listed in March 2011 and that even those disclosures came on the eve of the fact discovery cutoff date. But Hudalla did not complain about those disclosures at the time (either by asking to strike them or by asking for more discovery time), and it does not appear that he took the deposition of the project sponsor representatives for these projects that Walsh *had* named. Thus the name-switch is harmless. The only other potential prejudice Hudalla identifies is that he no longer has access to Walsh's project files so that he can identify the documents that these newly-named persons might have received or authored or on which they might have been mentioned. The Court directs Walsh to make its files for these projects

8

*immediately* available to Hudalla's counsel so they can review and copy any pertinent documents. The Court declines to bar these witnesses.

### 4.    Subcontractor representatives

Hudalla says that Walsh's December 22, 2011 supplemental Rule 26(a)(1) disclosures name seventeen representatives of subcontractors who were not previously identified. They are, by name and affiliation, the following: Ryan Bombsted (Vixen Constuction), Mike Cummings (Salamone Carpenters), Scott Dierking (Hill Mechanical), Brian Evangelista (Continental Painting), Jason Fluteman (Salamone Carpenters), John Foster (Foster Electric), Rita Fox (Vixen Construction), Thomas Hartford (Thomas O. Hartford & Sons), Bobby McGee (II in One), Jerry Olson (II in One), Scott Ort (M. Ecker & Co.), Oliver Pfifer (II in One), Loui Puig (A.L.L. Masonry), Jeff Rausch (II in One), Joe Salamone (Salamone Carpenters), Lisa Wheeler (Foster Electric) and Hugh Williams (Continental Painting).

Of these seventeen, Walsh identifies eight as may-call witnesses in its January 10, 2012 list of potential trial witnesses: Bombsted, Cummings, Dierking, Fox, Hartford, Ort, Pfifer, Puig, and Wheeler. Again, the Court will hold Walsh to this representation, which was part of the basis for its opposition to the motion to strike, and bars the other nine previously-unnamed witnesses. Their late disclosure was neither justified nor harmless.

With regard to the eight remaining subcontractor representatives, Walsh says that "[Hudalla's] inclusion of their subcontracts as Trial Exhibits prompted Walsh to list these individuals as potential witnesses. Prior to that designation by [Hudalla], Walsh had no reason to believe that these subcontractors would be at issue at trial." Def.'s

9

Resp. to Pl.'s Mot. to Strike at 6. Hudalla makes no real response to this contention.

Walsh's March 2011 supplemental Rule 26(a)(1) disclosures appear to have named only one representative of any of these entities, specifically, Michael Wheeler of Foster Electric, with regard to the South Park project. *See* Pl.'s Mot. to Strike, Ex. H, Attachment at 3. Because there is no indication that Hudalla took Mr. Wheeler's deposition, his contention that he would be prejudiced by a switch of the Foster representative to Lisa Wheeler is lacking in merit. Ms. Wheeler may testify, though her testimony will be limited to the South Park project, because that was the only project on which Walsh disclosed a Foster representative as a potential witness.

The only way in which Walsh contends that representatives of Vixen, Salamone, Hill, Hartford, Ecker, II in One, or A.L.L. were identified prior to December 2011 was via this general statement contained in the March 2011 supplemental Rule 26(a)(1) disclosures:

> Subcontractors and Vendors on the [sic] each of the above referenced projects. Representatives from any and all subcontractors or vendors disclosed in the project documents have knowledge of the scope of work, change orders, original contract prices, and the final contract price. The name of each subcontractor and vendor is contained in the documents produced on the above referenced projects.

*Id.* at 26. Under normal circumstances, this sort of blanket statement would be insufficient and would not render harmless the eve-of-trial naming of a particular witness from an entity not identified by name in a party's Rule 26(a)(1) disclosures. But given the breadth of Hudalla's claims in this case, and the fact that (as far as the Court can tell) he took no depositions of subcontractor representatives who *were* identified, the Court cannot say, at least not yet, that Walsh has failed to establish that its

nondisclosure of the new subcontractor representatives is harmless. Walsh is directed to file, by no later than the close of business on January 23, 2011, a further supplement to its Rule 26(a)(1) disclosures regarding these particular subcontractor representatives, identifying with specificity the particular subjects on which they may testify at trial. The Court will make a final decision regarding whether to strike them after reviewing that supplement.

### Conclusion

The Court grants relator's motion to strike in part, denies it in part, and defers ruling in part as described above.

s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: January 21, 2012